UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DENZIL HAMILTON,

                              **Plaintiff,**                    **MEMORANDUM AND**
                                                                     **ORDER TO SHOW CAUSE**

                            **-against-**                           **10-CV-3367 (ILG)**

UNITED STATES OF AMERICA,

                              **Defendant.**
-------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

On February 22, 2012, this Court imposed a $500 sanction on Assistant United States Attorney Leslie Brodsky, counsel for defendant United States of America (the "Government"), for appearing without her client at a settlement conference, in violation of this Court's Order of January 25, 2012, and for "impeding settlement efforts." See Minute Entry (Feb. 22, 2012) ("2/22/12 Order"), Electronic Case Filing Document Entry ("DE") #24. Currently pending before this Court is the Government's motion for reconsideration of the sanction against its counsel. See Memorandum of Law in Support of Defendant's Motion for Reconsideration (Feb. 28, 2012) ("Def. Mem."), DE #28. For the following reasons, the Court grants the Government's motion for reconsideration but defers ruling on whether to vacate the sanction, in order to afford the Government an opportunity to submit limited additional argument, as explained below.

## BACKGROUND

On November 4, 2011, this Court conducted a settlement conference in the instant action, filed under the Federal Tort Claims Act. See Minute Entry (Nov. 4, 2011) ("11/4/11

Order"), DE # 21. The Court had not specifically required that clients attend the November 4, 2011 conference. See Endorsed Order (May 18, 2011), DE #17. Nevertheless, Assistant United States Attorney Leslie Brodsky ("AUSA Brodsky") appeared at the conference on behalf of the Government, accompanied by an attorney from Immigration and Customs Enforcement (the client-agency). See 11/4/11 Order. At the conclusion of the conference, the Court recommended (off the record) that the parties settle the case for a specified amount, and gave the parties two weeks to respond in confidence to the Court's proposal. See id. The Court directed that, if a settlement did not occur, the parties were to file a Joint Pre-Trial Order by December 22, 2011. See id.

Although the Court's proposed settlement was rejected, the parties failed to file their Joint Pre-Trial Order or to otherwise communicate with the Court until January 24, 2012, when they filed a joint status report in response to an order from the District Court. See Letter Status Report (Jan. 24, 2012), DE #22; Order (Jan. 18, 2012). On January 25, 2012, this Court entered an order scheduling a follow-up settlement conference for February 22, 2012. See Order (Jan. 25, 2012) ("1/25/12 Order"), DE #23. In order to maximize the possibility of resolving the case, and in light of both counsel's disregard of the 11/4/11 Order, the 1/25/12 Order included the following directive:

> The conference must be attended by counsel of record and by clients with ultimate decisionmaking authority to settle the case[.] . . . Severe sanctions will be imposed for any further violations of court orders.

1/25/12 Order.

On February 22, 2012, plaintiff and his counsel appeared at the follow-up settlement conference, as directed. See 2/22/12 Order (noting appearances). AUSA Brodsky, however,

2

appeared without a client-representative of the Government. See id. When the Court first questioned AUSA Brodsky as to where her client was, she responded, without more, that she could "reach them by phone." See Transcript (Feb. 22, 2012) ("2/22/12 Tr.") at 2, DE #25. She made no apology for the absence of her client and no mention of the Court's 1/25/12 Order. See id. When pressed further, AUSA Brodsky explained, simply, that "[u]sually we don't have a representative present." Id. The Court then reminded Brodsky that, notwithstanding the Government's "usual" approach, its 1/25/12 Order had required clients to attend in person; she replied that "[n]ormally, with government agencies, they appear by phone and I didn't realize that this was to be an exception." Id. at 2-3. When confronted with the explicit language of the 1/25/12 Order — i.e., directing that the conference be attended by "counsel of record and clients with ultimate decision making authority," 1/25/12 Order (emphasis added) — AUSA Brodsky asserted, without explanation, that she did not interpret that language to require her client's in-person attendance. See 2/22/12 Tr. at 3. Notably, AUSA Brodsky did not deny having received or read the 1/25/12 Order. Nor had she made an application prior to the settlement conference seeking that her client be excused from the mandatory attendance requirement.

At the conclusion of the conference, the Court noted that, "without a representative here from the agency, we really can't have meaningful settlement discussions." 2/22/12 Tr. at 5. The Court then added: "I warned that severe sanctions would be imposed for any further violations of court orders. Frankly, . . . I've had enough with the violations and I'm going to impose a sanction of $500 on Ms. Brodsky. . . ." Id.

3

On February 28, 2012, the Government moved for reconsideration of this Court's order sanctioning AUSA Brodsky.[1]

**DISCUSSION**

**I.      Legal Standard**

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the [ ] court." Reddy v. Salvation Army, No. 06-CIV-5176 (SAS), 2008 WL 4755733, at *1 (S.D.N.Y. Oct. 27, 2008) (citing Patterson v. United States, No. 04-CIV-3170 (WHP), 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006)). Ordinarily, motions for reconsideration should "'be denied unless the moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Reddy, 2008 WL 4755733, at *1 (quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995)).

**II.     Failure to Bring Client with Authority Violated the 1/25/12 Order**

The Government first argues that "[t]here was no violation of the [1/25/12] Order." Def. Mem. at 2. According to the Government, the AUSA's "client. . . is the sovereign - the United States - and the 'ultimate decisionmaking authority to settle the case' lies solely with the Attorney General," who delegated authority to the United States Attorney's Office to settle cases for $1 million or less. See id. at 2-3. The Government further asserts, in its memorandum of law, that AUSA Brodsky had authority to value the case and to make a

---

[1] Although the case was closed when the parties eventually settled through court-annexed mediation, the instant motion remains outstanding. See generally Order Dismissing Case (May 30, 2012), DE #42.

recommendation to "her superiors within the U.S. Attorney's Office, who in turn have the ultimate power to authorize the AUSA to consummate the settlement." Id. at 3. Essentially, the Government rationalizes that because AUSA Brodsky had the *authority to recommend* settlement to her superiors, who, allegedly had *authority to approve* her recommendation, AUSA Brodsky, by extension, had the necessary "ultimate decisionmaking authority." Id. Ergo, the Government argues, AUSA Brodsky's presence alone at the settlement conference did not violate the 1/25/12 Order. See Def. Mem. at 3.

The Government's hypertechnical and disingenuous argument can be swiftly rejected. At the February 22nd settlement conference, AUSA Brodsky never suggested that she had ultimate settlement authority. Indeed, the transcript of the proceeding makes clear that both she and the Court understood that the client who was supposed to be present, and who purportedly could be reached by phone, was a representative of the client-agency (which had sent a representative to the earlier settlement conference). See 2/22/12 Tr. at 2-3 (AUSA Brodsky: "Normally, with government agencies, they appear by phone and I didn't realize that this was to be an exception."); id. at 5 (The Court: "Without a representative here from the agency, we really can't have meaningful settlement discussions."); see also 11/4/11 Order (at earlier settlement conference, AUSA Brodsky was accompanied by ICE attorney).

Moreover, even assuming *arguendo* the accuracy of the Government's current theory of decisionmaking authority -- i.e., that those with authority were AUSA Brodsky's superiors in the U.S. Attorney's Office -- the Government fails to explain why those superiors did not attend the conference. In an unsworn memorandum of law unaccompanied by a declaration from AUSA Brodsky or her superiors, the Government now argues -- in the face of the

5

transcript's references to *agency* representatives -- that AUSA Brodsky had "made arrangements for [her AUSA] superiors to be 'reasonably available' by telephone" and that, if needed, the superiors could have traveled to the courthouse, which is "across the street" from the U.S. Attorney's Office. Def. Mem. at 4. Even if true, the fact that those with authority were one block from the courthouse makes AUSA Brodsky's flouting of this Court's 1/25/12 Order not only inexcusable, but insulting.

Although the Government emphasizes, as did AUSA Brodsky at the conference, that those with full settlement authority (whoever they were) could be reached by phone, AUSA Brodsky never sought leave of the Court in advance of the conference to excuse these persons from attending in person. See Malave v. Nat'l Pension Fund for Hosp. & Health Care Emps., No. 92 Civ. 3824 (DC), 1996 WL 175090, at *2 (Apr. 15, 1996) (Chin, J.) (denying motion to vacate sanctions against attorney whose clients failed to attend settlement conference because "[e]ven assuming [plaintiffs] had valid reasons for not attending . . . , these excuses were not presented to [the judge] *prior* to the conference") (emphasis in original), aff'd, 125 F.3d 844 (table), 1997 WL 589885, at *1 (2d Cir. 1997). Finally, AUSA Brodsky's assertion that she construed the Court's specific language requiring physical presence to mean that her client would be permitted to participate by phone defies belief. Therefore, the Court declines to alter its finding that AUSA Brodsky violated the 1/25/12 Order.[2]

---

[2] Equally unavailing is the Government's contention that "[t]he AUSA did not impede settlement efforts." Def. Mem. at 5. Whatever the impact of the absence of the Government's decisionmaker at the February 22nd settlement conference, the Court was entitled to sanction defense counsel for her flagrant violation of the Court's order.

**III.    Authority for Imposing the Sanction**

In the alternative, the Government argues that, assuming AUSA Brodsky was in violation of the 1/25/12 Order, the Court improperly imposed a sanction on her without specifically citing its authority for doing so and without giving her "express notice of its intention to impose a monetary sanction on her." See Def. Mem. at 6-7.  As for the latter argument, the Court clearly stated in its 1/25/12 Order that "[s]evere sanctions [would] be imposed for any further violations of court orders." 1/25/12 Order.  Thus, the Court rejects the claim that counsel was not on notice that she could be sanctioned for violating a court order.

As for the Court's failure to specifically articulate the basis for its power in imposing the sanction, the Court was relying on its inherent authority. See United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2000) (finding of bad faith not required for sanction under inherent authority when such authority is used "to police the conduct of attorneys as officers of the court," including "sanction[ing] misconduct by an attorney that involves that attorney's violation of a court order").[3]  The Government does not dispute that the Court's inherent authority includes the power to sanction attorneys for violating judicial orders; rather, the

---

[3] Although case law also supports the authority of the undersigned magistrate judge to impose sanctions under Rule 16(f) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(e)(2), the Court did not rely on such authority in issuing its sanction.  See, e.g., Dvorkin v. N.Y.-Presbyterian Hosp., No. 10 CV 3680 (GBD), 2011 WL 280801, at *2-4 (S.D.N.Y. Jan. 19, 2011) (magistrate judge did not abuse discretion in awarding sanctions against counsel for failing to arrange party's attendance at settlement conference, citing 28 U.S.C. § 636(e)(2)); Dan River, Inc. v. Crown Crafts, Inc., No. 98-CIV. 3178 LMM AJP, 1999 WL 287327, at *1 (S.D.N.Y. May 7, 1999) (citing inherent authority and Rule 16(f)).

7

Government complains that the Court failed to incant the term "inherent authority" in imposing the sanction in this case. See Def. Mem. at 6. To be sure, in retrospect the Court regrets that it failed to identify the specific basis of its authority to award sanctions. Nevertheless, the reason for the sanction could not have been clearer: AUSA Brodsky took it upon herself to ignore the Court's 1/25/12 Order, and thus engaged in conduct well understood to be sanctionable under the Court's inherent authority. See Sosinsky v. Chase Manhattan Bank, No. 99 Civ. 43 (JGK), 1999 WL 675999, at *2 (S.D.N.Y. Aug. 31, 1999) ("It is well settled that a magistrate judge has the authority to issue an order containing sanctions in connection with a matter that has been properly referred to the magistrate judge."); Dan River, 1999 WL 287327, at *1 (sanctioning party for failing to appear at settlement conference in contravention of court order, pursuant to inherent authority and FRCP 16(f)); see also Coltrade Int'l, Inc. v. United States, 973 F.2d 128, 132 (2d Cir. 1992) (remanding case so district court could specifically identify the authority for sanctions, even though record made it "abundantly clear" that the sanctioned attorney's conduct was "actionable under both Rule 11 and 28 U.S.C. § 1927").

In the interest of procedural fairness, the Court will, however, allow the Government and/or AUSA Brodsky to make a supplemental submission addressing the Court's authority under its inherent powers to sanction AUSA Brodsky for violating the 1/25/12 Order. In making this submission, the Government is foreclosed from rearguing the issue of whether AUSA Brodsky violated the 1/25/12 Order or whether she received proper notice, as AUSA Brodsky had ample opportunity to address these issues and did so at the February 22nd conference. Furthermore, the Government's post hoc rationalizations for AUSA Brodsky's violation of the Court's 1/25/12 Order have been considered and rejected in the instant

8

opinion. The limited purpose of the supplemental submission is to afford the Government the opportunity to address the legal standards for evaluating sanctions imposed under the Court's inherent authority.

## CONCLUSION

For the reasons stated above, the Court grants the Government's motion for reconsideration, but defers ruling on the merits of the vacateur at this time. Instead, the Government and/or AUSA Brodsky are ordered to show cause, via ECF, no later than June 19, 2012, why AUSA Brodsky, in violating this Court's order, should not be sanctioned pursuant to the Court's inherent authority.

**SO ORDERED.**

**Dated:** Brooklyn, New York
June 12, 2012

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**