UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------x
DENZIL HAMILTON,

                Petitioner,

                                            MEMORANDUM AND ORDER
   -against-                              10 CV 3367 (ILG)

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------------------x
GLASSER, United States District Judge:

       Pending before the Court is an objection to a Report and Recommendation (R&R) of a Magistrate Judge (MJ), that the Court sanction an Assistant United States Attorney (AUSA) for failure to comply with an order issued by the MJ during the course of a settlement conference. The facts that catapulted this matter to this level are simply these.

       The plaintiff brought an action against the United States pursuant to the Federal Tort Claims Act for injuries claimed to be caused by the negligence of a driver of a vehicle employed by the Immigration and Customs Enforcement Agency (ICE) Department of Homeland Security. A settlement conference was convened by the MJ on November 4, 2011 at which the AUSA and an attorney from ICE appeared. The MJ made a recommendation of a specific amount for the parties to consider for settling the case and gave them two weeks to respond to her proposal. If the recommendation was not accepted, the parties were to file a joint pretrial order. A follow-up conference was subsequently ordered to be held on February 22, 2012, which order provided as follows: "The conference must be attended by counsel of record and by clients with ultimate decision making authority to settle the case . . . . Severe sanctions will be imposed for

any further violation of court orders." Dkt. No. 24. On February 22nd, the AUSA appeared at the scheduled conference without her client - the appropriate representative of the United States government. The transcript of that proceeding reflects, in relevant part, after what is assumed to be a question put to the AUSA why her client wasn't present:

| | |
|---|---|
| THE COURT: | All right. And Ms. Brodsky? |
| MS. BRODSKY: | I can reach them by phone. |
| THE COURT: | Why aren't they here? |
| MS. BRODSKY: | Usually we don't have a representative present. |
| THE COURT: | I can understand and the first conference, which did not result in a settlement, I didn't require clients to be there but my scheduling order setting up this conference specifically directed that clients with ultimate decision-making authority be in attendance. |
| MS. BRODSKY: | I didn't take – I didn't mean to disregard the Court order. I just thought that since normally they appear by phone, that that would be okay. |
| THE COURT: | The language specifically says the conference must be attended by counsel of record and by clients with ultimate decision making authority to settle the case. I don't include that where I don't want them to be – where I don't care whether they're present or not. You didn't read that to mean that they had to be here? |
| MS. BRODSKY: | Normally, with government agencies, they appear by phone and I didn't realize that this was to be an exception. I apologize, Your |

>     Honor.
>
>                                 *   *   *
>
> THE COURT:    We're on the record. I've met with each side privately and off the record. The parties' positions are too far apart for settlement or at least the positions as communicated to me and Ms. Brodsky's here without her client, notwithstanding my very clear order that the conference must be attended by counsel of record and by clients with ultimate decision making authority to settle the case. Without a representative here from the agency, we really can't have meaningful settlement discussions. I warned that severe sanctions would be imposed for any further violations of court orders. Frankly, I am really – I've had enough with the violations and I am going to impose a sanction of $500 on Ms. Brodsky, payable within one week to the Court all purpose – the Court purpose fund.

Dkt. No. 25.

That this matter has come this far is unfortunate. An amicable resolution of it without Article III intervention was speedily foreclosed by the aggressive, confrontational stance reflected in the first Memorandum in Support of a Motion for Reconsideration and Vacatur. Dkt. No. 28. The bold assertion in its opening salvo that "There was no violation of the Court's Order" was, in essence, to charge the MJ with the imposition of a sanction that was groundless and fanciful. Id. at p.2. In the same tenor was the assertion that the MJ's conclusion that settlement efforts were impeded was "clearly erroneous and reconsideration is necessary to prevent manifest injustice." Id. at

3

p.5.  Destined to offend was the totally unsupported assertion that "it was clear error for the Court to sanction the AUSA for 'impeding settlement efforts' simply because the government refused to raise its settlement offer to the level demanded by the plaintiff . . . as a means for clubbing the [defendant] into an involuntary compromise" citing Kothe v. Smith, 771 F.2d 667, 669-70 (2d Cir. 1985).  Other errors asserted to require reconsideration were the failure to specify the precise authority for imposing the sanction and failure to give express notice that sanctions would be imposed for failing to heed the Court's orders.  Id. at 6-7.

The MJ deferred ruling on the merits of their motion giving the defendant an opportunity to make a supplemental submission addressing the standards applicable to assessing sanctions imposed pursuant to the inherent authority of the Court and rejecting the other assertions of error as meritless.  Dkt. No. 44.

The supplemental memorandum that followed, Dkt. No. 45, devotes more than 6 pages to whether a MJ has any inherent authority at all to sanction counsel, concluding that if she has that authority it should not be exercised in this case given the AUSA's declaration acknowledging her mistake which was honestly made without any intent to disobey the Court's Order.  Dkt. No. 45-1.

Responding to the supplemental submission, the MJ, for reasons stated, converted her previously issued Order to Show Cause to a Recommendation that this Court deny the defendant's motion to vacate, writing

> This Court does not lightly recommend sanctions against AUSA Brodsky, who reportedly has been practicing as an AUSA for the past 21 years.  See Brodsky Decl. ¶ 11.  In fact, in eighteen years on the bench, this magistrate judge has never before sanctioned an AUSA, and the Court takes no

4

>pleasure in recommending such a sanction now. In light of AUSA Brodsky's otherwise unmarred professional record as a public servant, . . . the Court does, however, modify its original sanction order in this respect: the recommended amount of the sanction is reduced from $500 to $100.

Dkt. No. 46.

Finally, the defendant submitted a 32 page Memorandum of Law in Support of the United States of America's Objections to the Magistrate Judge's Report and Recommendation. Dkt. No. 50. Letters with attachments thereto supplementing that submission were subsequently received, the last one dated April 4, 2013. Dkt. Nos. 52, 53.

## Discussion

The errors of law and facts claimed to be committed by the MJ in the government's three memoranda of law will be now addressed.

### 1. There Was No Violation of the MJ's Order

The arguments made in support of that flat assertion are nothing less than startling. One is that the AUSA had decision making authority to settle the case and there was no need for a "client" to attend. To begin with, if that were so, the MJ's attention should have been called to that fact and her Order clarified accordingly. That it is not so is explicitly stated in the first Memorandum to Reconsider. Dkt. No. 28 at 2, viz.: "[T]he AUSA litigating the case has the authority to value the case on behalf of the United States and to recommend settlement terms to her superiors within the U.S. Attorney's Office. . . Although the Justice Department confers with 'client' agencies like ICE . . . to request their concurrence in settlement terms, ultimately the sole authority to settle an FTCA case lies with the Attorney General and his delegates, and the agency's

formal, direct participation in settlement conferences is unnecessary." Another argument in support of that assertion is the citation to Rule 16(c)(1) Fed. R. Civ. P. which provides in relevant part that "the court may require that a party or its representative be present <u>or reasonably available by other means</u> to consider possible settlement." (emphasis defendant's). The determination whether <u>the party or its representative</u> attend the conference is one for the Court and not the party to make. The defendant's acknowledgment of that is plainly stated, at p. 5, "In hindsight perhaps it would have been preferable for the United States to seek clarification of the January 25 Order's requirement of client attendance or to request the Court, pursuant to Rule 16, to permit the lead AUSA to have her superiors in the office <u>and the client agency</u> be reasonably available by telephone." (emphasis mine). This assertion – that the Order was not violated – is meritless and frivolous.

    2. <u>The Order Was Too Vague and Ambiguous to Support a Sanction</u>

    I will not dwell on this argument beyond reciting a few lines from the United States Memorandum in Support of Objections to the MJ's R&R, Dkt. No. 50 at 15:

> Here, notwithstanding the Magistrate Judge's insistence that her January 25 Order was clear,[3] two aspects of it were so vague and ambiguous as to preclude any finding that the AUSA committed a sanctionable violation, namely: (1) who constitutes the AUSA's "client with ultimate decision making authority to settle the case?" and (2) what is meant by "attend?"

    The last question is reminiscent of the now timeless question – what is the meaning of "is?"

6

The Memorandum, tellingly however, goes on to state "To be sure, in the face of these ambiguities, the better practice would have been for the AUSA to request a clarification of the January 25 Order from the Magistrate Judge in advance of the February 22 conference rather than to have ventured to interpret them on her own." Dkt. No. 50 at 13. In any event, if the author of this Memorandum required clarification of the Order, the AUSA who was sanctioned did not as her Declaration plainly attests. Dkt. No. 45-1. She knew who the client was. She offered to call them by phone.

> 3. The AUSA Had the Functional Decision Making Authority to Settle the Case on Behalf of the Sovereign Such That No External "Client" was Required

The mere statement of this argument is the clearest approbation of the MJ's Order and has been otherwise briefly discussed above and shown to be wrong. On p. 15 of its Memorandum, Dkt. No. 50, the government writes, "the AUSA litigating the case has the primary authority . . . to recommend settlement terms to her superiors . . . who in turn have the ultimate power to ratify the recommendation." (emphasis added).

> 4. The January 25 Order Did Not Expressly Require that the "Attendance" of the Client be in Person, and the AUSA therefore Did Not Violate the Order

That assertion calls to mind the exchange between Humpty Dumpty and Alice in Chapter VI of Carroll's Through the Looking Glass:

> "When I use a word," Humpty Dumpty said, . . . "it means just what I choose it to mean - neither more nor less."
> "The question is," said Alice, "whether you can made words mean so many different things."

That colloquy is exquisitely apt to the multipage disquistion on the words "attend" and "attendance," Dkt. No. 50 at 18-21, and further comment would be

7

superfluous. It is sufficient to say that the AUSA understood what "attend" meant.

     5. <u>The AUSA Did Not Impede Settlement</u>

This <u>ipsi dixit</u> assertion is of no significance and is irrelevant. The MJ cogently responds to it in her Memorandum and Order to Show Cause, Dkt. No. 44 at n.2 on p.6: "Equally unavailing is the government's contention that the 'AUSA did not impede settlement efforts.' Whatever the impact of the absence of the government's decision maker at the February 22nd settlement conference, the Court was entitled to sanction defense counsel for her flagrant violation of the Court's Order." See <u>Malave v. Nat'l. Fund for Hosp. & Health Care Emps.</u>, 1996 WL 175090 at *2 (April 15, 1996) (denying motion to vacate sanctions against attorney whose clients failed to attend settlement conference because "[e]ven assuming ]plaintiffs] had valid reason for not attending . . . these excuses were not presented to [the judge] prior to the conference"), aff'd. 125 F.3d 844 (table)(2d Cir. 1997).

     6. <u>The Magistrate Judge Did Not Adopt the Correct Standard<br>    for Inherent Authority Sanctions: A Showing of Bad<br>    Faith is Required, and Such a Showing Was Not Made Here</u>

Advancing this argument is hardly understandable given the defendant's familiarity with <u>United States v. Seltzer</u>, 227 F.3d 36 (2d Cir. 2000), portions of which precisely applicable to this argument are cited on p. 25 of its Memorandum of Law, Dkt. No. 50. The Court there wrote at 227 F.3d 42 "Today we hold that the inherent power of the district court also includes the power to police the conduct of attorneys as officers of the court, and to sanction attorneys for conduct not inherent to client representation, such as violations of court orders or other conduct which interferes with the court's power to manage its calendar and the courtroom without a finding of bad faith.

Accordingly, we reject Seltzer's argument that he district court's order is defective because it does not include a specific finding of bad faith."

In commendable caution, the MJ converted her previously issued Order to Show Cause to a Report and Recommendation so that the imposition of the sanction pursuant to her inherent power would be the imposition by this Court were her R&R to be affirmed. She did so because although this Circuit Court explored at length the powers of a MJ to sanction for contempt in a Rule 11 context, the Court has not addressed that Judge's inherent power to sanction for contempt. Mindful of Judge Learned Hand's admonition that it is not "desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant" he nevertheless conceived it to be the measure of its duty "to divine as best it can, what would be the event of an appeal in the case before it." Spector Motor Service v. Walsh, 139 F.2d 809, 823 (2d Cir. 1943)(dissenting), vacated 323 U.S. 101 (1944). Although I do not conceive it my duty to do so, I would venture to believe the oft-cited case of Chambers v. Nasco, Inc., 501 U.S. 32, 43-44 (1991), would make a finding of such power to be vested in a Magistrate Judge to be compelling. See Malave, *supra*; Sosinsky v. Chase Manhattan Bank, 1999 WL 675999 at *2 (S.D.N.Y. 1999).

Conclusion

The Order the AUSA failed to comply with was clear and unambiguous and that proof of her non-compliance was clear and convincing and that she had not diligently attempted to comply in a reasonable manner and that a showing of bad faith was not required, and that the imposition of the sanction was vested in the inherent power to impose it.

In making that determination, however, I am mindful of the teachings of caution taught in countless cases, namely, that "Because of their very potency, inherent power must be exercised with restraint and discretion." Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991); "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." Roadway Exp. Inc. v. Piper, 447 U.S. 752 (1980).

The imposition of this sanction did not fall easily from the lips of this Magistrate Judge, who, as she said, has never imposed one in eighteen years of distinguished and exemplary service. The tenor of the proceeding created by words spoken and unspoken, and by conduct and gestures which the pages of a transcript cannot possibly convey, must have evoked the sanction believed to be necessary "to maintain the authority and dignity of the Court." Roadway Exp. Inc. at 764. Counsel, however, expressed her apology promptly. She attempted to assure the Court that she intended no disrespect nor did she intend to disregard the Court's Order. She explained that in her years of experience, government agencies generally appeared by phone. That explanation based upon her experience is affirmed by discussions of orders similar to this one that was in issue. See United States v. United States District Court for the Northern Mariana Islands, 694 F.3d 1051 (9th Cir. 2012); In re United States, 149 F.3d 332 (5th Cir. 1998); In re Stone, 986 F.2d 898 (5th Cir. 1993).

The foregoing discussion compels me to conclude that the objection to the authority of the Magistrate Judge to issue the Order and the validity of it, is overruled. However, I also conclude that the event as reflected in the transcript was instinct with a fortuitous miscue or, at the very least, a belief that the client's "availability by other

10

means," Rule 16(c)(1) Fed. R. Civ. P., would have been acceptable and the monetary sanction is vacated.

      SO ORDERED.

Dated:      Brooklyn, New York
              September 11, 2013

                                                    /s/
                                           I. Leo Glasser